Farrell Area School District and Farrell Area Day Care Center, Petitioner *v.* Robert D. Deiger and Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission, Respondents.

432

Argued November 16, 1984, before Judges MAC-
PHAIL, DOYLE and PALLADINO, sitting as a panel of
three.

*Michael I. Levin, Cleckner and Fearen,* for peti-
tioners.

*Michael L. Foreman,* Assistant General Counsel,
for respondents.

OPINION BY JUDGE MACPHAIL, April 1, 1985:

Farrell Area School District and Farrell Area Day Care Center (Petitioners) appeal here from the opinion and order of the Pennsylvania Human Relations Commission dated July 5, 1983, which adopted the opinion, findings of fact and conclusions of law of the Hearing Commissioner who found that Petitioners had violated Section 5 of the Pennsylvania Human Relations Act (Act)[1] by discriminating against Robert D. Deiger (Complainant) by refusing to hire him.

The findings of fact, as adopted by the Commission, were that in December 1975, Complainant, a white male, applied for a position as teacher-director for Teeny Tot Day Care Center (Teeny Tot). At that time, Teeny Tot was a subcontractor day care program funded by the Pennsylvania Department of Public Welfare (DPW). The prime contractor was the Farrell Area School District.

Several other persons applied for the position of teacher-director including Patricia Woodbridge, a

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955. This section provides in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required. . . .

black female. Ms. Woodbridge was hired as teacher-director on or about February 2, 1976.

Complainant met the basic requirements to qualify for the position of teacher-director. He had a college degree in elementary education with several courses in early childhood education. Complainant had previous experience working with preschool children, including a college course which required him to work one day per week in a day care center and a summer job at a day camp where he worked with five year old children.

Ms. Woodbridge had a college degree in art education. Teeny Tot contacted DPW to verify Ms. Woodbridge's qualifications for the position of teacher-director.[2] Ms. Woodbridge had prior experience working with young children at a family guidance center. Ms. Janis Rubeo, who interviewed Ms. Woodbridge for the teacher-director position, stated that she recommended Ms. Woodbridge because of Ms. Woodbridge's intelligence, self-assurance and familiarity with community social service resources. In addition, Teeny Tot stated that Ms. Woodbridge was hired instead of Complainant because of her prior experience working with parents in a supervisory capacity.

In 1978 Teeny Tot stopped providing day care services. Subsequently, the Farrell Area Day Care Center began providing day car services to an additional number of children equal to the number previously served by Teeny Tot. Day care services continued to be funded by DPW.

---

[2] Although it is not listed as a finding of fact, the record shows that DPW confirmed that Ms. Woodbridge was qualified for the position, conditioned only upon her obtaining an additional seven hours of college credit in early childhood education. The total number of credit hours needed was 18; DPW found that Ms. Woodbridge already had 11 credit hours in contrast to the Commission's finding that she had 12.

Complainant filed a complaint before the Commission on or about March 11, 1976, alleging that Teeny Tot violated Section 5 of the Act by refusing to hire him as teacher-director on the basis of his race and sex. On March 30, 1981, the complaint was amended to add the present Petitioners as respondents. In finding that Petitioners had discriminated against Complainant, the Commission adopted the Hearing Commissioner's conclusion of law that successor liability could be imposed upon Petitioners because there was continuity of operation between Teeny Tot and Petitioners which was sufficient as a matter of law to operate as a consolidation or merger.

Petitioners raise several issues before us.[3] We will consider first whether the Commission erred in failing to dismiss the amended complaint filed March 30, 1981, on the basis of laches.[4] We hold that it did not. "The question of laches is factual and is determined by examining the circumstances of each case." *Leedom v. Thomas,* 473 Pa. 193, 200-01, 373 A.2d 1329, 1332 (1977). The party asserting laches must estab-

---

[3] Our scope of review is limited. We must determine "whether or not the findings of fact necessary for the Commission's adjudication are supported by substantial evidence, whether or not the adjudication was made in accordance with law and whether or not the Commission abused its discretion in reaching its decision or in directing appropriate relief." *Luzerne County Community College v. Pennsylvania Human Relations Commission,* 33 Pa. Commonwealth Ct. 121, 124, 381 A.2d 201, 202 (1977).

[4] Petitioners also argue that the amended complaint should have been dismissed because it was filed after the statute of limitations had run. We do not find a copy of that motion to dismiss in the record; however, the Commission addressed only the issue of laches. A party may not raise on appeal any question which was not raised before the agency from which the appeal is taken. Section 703 of the Administrative Agency Law, 2 Pa. C. S. §703. In any event, our disposition of the merits of this case makes further discussion of this point unnecessary.

lish that it was prejudiced by a period of inordinate delay by the other party. *See id.* The record indicates that the investigation of the complaint took three years. That delay, of course, cannot be Complainant's responsibility. There is no explanation in the record for the dormant status of the complaint for the next two years. It is of significance that Petitioners took no action to expedite the scheduling of a hearing on the matter during that period of time. The subsequent amendment to the complaint merely added the school district as a party because it had taken over the program. We agree with the Commission that neither inordinate delay on Complainant's part nor prejudice to the Petitioners has been proven in this case.

Petitioners argue that the Commission erred as a matter of law in finding a violation of Section 5 of the Act and that the Commission's conclusions are not supported by either the necessary findings of fact or substantial evidence.

The Commission's conclusions of law which are relevant to this issue are:

8. Complainant may establish a *prima facie* case of discrimination by proving that he was a member of a protected class or classes, that he applied for a position for which he was qualified, that he was not hired, and that the Respondent [Petitioner here] hired a person not of Complainant's protected class or classes.

9. Complainant has met his burden of establishing a *prima facie* case.

10. Respondent [Petitioner here] has the burden, if Complainant establishes a *prima facie* case, of proving its conduct did not violate the Act. It may do this by proving that the successful candidate was the best able and most qualified candidate for the position.

11. Respondent [Petitioner here] has not established that its conduct did not violate the Act. (Emphasis in original.)

We find first that the Commission has misstated the law which applies to proving employment discrimination under the Act. A complainant first has the burden of proving a prima facie case of employment discrimination.[5] "Once the prima facie case is established, a rebuttable presumption of employment discrimination arises. *The burden of production then shifts to the employer* to show a legitimate non-discriminatory reason for the rejection." *Department of Transportation v. Pennsylvania Human Relations Commission*, 84 Pa. Commonwealth Ct. 98, 103, 480 A.2d 342, 346 (1984) (emphasis added). This does *not* mean that the employer must prove that "complainant was not the best able and most competent to perform the services required." *Winn v. Trans World Airlines, Inc.*, Pa. , , 484 A.2d 392, 396 (1984) (NIX C.J., opinion in support of affirmance).[6] The complainant "carries the ultimate burden of persuasion as to whether the employer had a discriminatory

---

[5] We will discuss below the requirements for a prima facie case where the complainant is a white male, as in the instant case.

[6] The United States Supreme Court has also addressed this question where the issue is employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), *as amended*, 42 U.S.C. §§2000e-2000e-17 (1982). After the complainant has established a prima facie case the burden of *production of evidence* shifts to the employer, who must come forth with evidence that the reason for rejecting the complainant was legitimate and nondiscriminatory. The employer does not have the burden of proof. *Texas Department of Community Affairs v. Burdine (Burdine)*, 450 U.S. 248 (1981). Furthermore, this Court has previously adopted the *Burdine* formulation. *Caterpillar Tractor Co. v. Pennsylvania Human Relations Commission*, 78 Pa. Commonwealth Ct. 86, 91-92, 466 A.2d 1129, 1132 (1983).

motive in rejecting his application.'' *Department of Transportation,* 84 Pa. Commonwealth Ct. at 103, 480 A.2d at 346. We hold, therefore, that the Commission clearly erred as a matter of law in its conclusions of law 10 and 11.

Because this is the unusual case in which the Commission has found that a white male was the victim of unlawful employment discrimination we must also determine, as a matter of law, the appropriate standard to apply in determining whether Complainant made out a prima facie case.

The Commission used the four prong test for employment discrimination which was adopted by the Pennsylvania Supreme Court in *General Electric Corp. v. Pennsylvania Human Relations Commission (General Electric),* 469 Pa. 292, 365 A.2d 649 (1976), following the standard articulated in *McDonnell-Douglas Corp. v. Green (McDonnell-Douglas),* 411 U.S. 792 (1973). Those cases set forth that a prima facie case of employment discrimination has been made out "if the complainant establishes that he is a member of a protected minority, that he applied for a job for which he was qualified, that his application was rejected and that the employer continued to seek other applicants of equal qualifications.'' *General Electric,* 469 Pa. at 304, 365 A.2d at 655-56. We note, however, that our state Supreme Court noted, *General Electric,* 469 Pa. at 304-05 n.11, 365 A.2d at 656 n. 11, and the Supreme Court of the United States stated, *Burdine,* 450 U.S. at 253 n.6, that this four prong test is not an inflexible statement of the requisites for a prima facie case.

We have no doubt that Complainant in the instant case is protected by the Act. Section 5 of the Act prohibits discrimination in employment against *any* individual because of race or sex.

We hold, however, that the Commission erred as a matter of law by applying the standard which it used to determine whether Complainant had made out a prima facie case. The Supreme Court stated in *McDonnell-Douglas*, 411 U.S. at 802, that in order to make out a prima facie case a complainant must first show "that he belongs to a *racial minority* . . . ." (Emphasis added.) In *General Electric*, 469 Pa. at 304, 365 A.2d at 655-56, our Supreme Court stated that a complainant must establish "that he is a member of a *protected minority* . . . ." (Emphasis added.) In the instant case, the Commission stated that Complainant must prove "that he was a member of a *protected class* . . . ." Conclusion of law 8 (emphasis added).

We hold that in order for a white male to establish a prima facie case of employment discrimination, he "must prove by a preponderance of the evidence that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253.[7]

The primary reason for having Complainant establish a prima facie case is to eliminate the most obvious nondiscriminatory reasons why he was not hired. *Id.* at 253-54. Consequently, we have examined the record to determine whether, as a matter of law, the circumstances surrounding Teeny Tot's failure to hire Com-

--------

[7] We recognize that *Burdine* was decided on the basis of federal legislation; *i.e.*, Title VII. However, we find no clear statement from our state courts concerning this specific issue. We are persuaded that we should apply this same standard on the basis of the parallels between Title VII and the Act and because in *General Electric* our Supreme Court adopted the federal four prong test to be used to determine whether a prima facie case exists under the Act. We believe that it is imperative to articulate a standard to be used in the unusual case where the person seeking redress is a white male.

plainant were such as to give rise to an inference of unlawful discrimination. We find that they were not.

Although there is substantial record evidence to support the Commission's findings of fact concerning the qualifications of Complainant and Ms. Woodbridge and the circumstances of the hiring process, these facts taken together simply do not give rise to an inference of discrimination. Such an inference requires more than the fact that the successful applicant was of a different race and sex from the white male who was not employed.

Our careful review of the record does not show that Complainant and Ms. Woodbridge were treated differently by Teeny Tot during the employee selection process. Although Complainant had a college degree in elementary education and several more credits in early childhood education than did Ms. Woodbridge, the latter's college degree in art education did not render her unqualified. Indeed, DPW approved her as qualified to fill the position. Furthermore, a review of the transcripts of the two applicants shows that Ms. Woodbridge had the better academic record. The most that we can say, on this record and the facts that were found by the Commission, is that the applicants were *differently* qualified for the position which they sought. "It has always been the rule that an employer may be selective about the persons he employs as long as he does not *unlawfully* discriminate among the applicants." *Philadelphia Electric Co. v. Pennsylvania Human Relations Commission*, 68 Pa. Commonwealth Ct. 212, 227, 448 A.2d 701, 708 (1982) (emphasis in original).

Even though we accept the Commission's implicit finding that Complainant was qualified for the position, Complainant's prima facie case here consists of the following: 1) a white male applied for a position

for which he was qualified; 2) several other persons, including a black male, a black female and six white females, applied for the same position; and 3) the black female, who was also qualified for the position, was hired. These circumstances clearly do not give rise to an inference of *unlawful* discrimination. Complainant, therefore, has failed to meet his initial burden to establish a prima facie case.

For the reasons stated above,[8] we will reverse the decision of the Commission for errors of law.

## ORDER

The order of the Pennsylvania Human Relations Commission dated July 5, 1983, Docket No. E-10182, is hereby reversed.

This decision was reached prior to the resignation of Judge WILLIAMS, JR.

---

CONCURRING AND DISSENTING OPINION BY JUDGE DOYLE:

While I agree with the majority's analysis of what criteria must be shown in order for Complainant to establish a prima facie case of discrimination, I must respectfully dissent from both the majority's application of the facts to the law and its order.

The majority correctly holds that Complainant, to establish a prima facie case of employment discrimination, must prove by a preponderance of the evidence:

1. That he applied for an available position for which he was qualified.

---

[8] Petitioners have also raised an issue in regard to their liability where the original employer was Teeny Tot, alleging that successor liability is not applicable to them. In light of our decision that the finding of employment discrimination was in error, we will not address this issue.

2. That he was rejected under circumstances giving rise to an inference of discrimination.

The Pennsylvania Human Relations Commission (Commission) found as fact that Complainant had eighteen credit hours in early childhood education, the number required for the position, (the selectee had twelve, making her only conditionally qualified) and further found that Complainant had "far more experience in working with very young children." The Commission also found that the selectee had no administrative experience and, yet, was hired for a position requiring administration of the day care center as well as teaching duties.

The majority holds that this evidence is legally insufficient to establish a prima facie case of employment discrimination. While it is my view that we should not consider the legal sufficiency of the evidence, but instead remand the case for the Commission to do so, I must state that in my opinion the facts as found by the Commission are sufficient to establish a prima facie case as a matter of law, and accordingly, shift the burden of production to the employer to show a legitimate non-discriminatory reason for the rejection. *Department of Transportation v. Pennsylvania Human Relations Commission,* 84 Pa. Commonwealth Ct. 98, 480 A.2d 342 (1984).

As I previously indicated, I believe a remand is required. The majority, in finding that Complainant under the new test set forth today has not established a prima facie case of employment discrimination, has deprived the Commission of the opportunity to apply the facts it found to the correct legal standard. It has further deprived the Commission of the opportunity to make additional findings which would be relevant to determining whether the Complainant was rejected under circumstances giving rise to an inference of dis-

crimination. Until today a white male complainant would have had no way of knowing that to establish a prima facie case of employment discrimination he would need to demonstrate rejection under circumstances inferring discrimination. There is record evidence in this case which, *if believed,* would tend to establish this fact. Specifically, there is testimony that Complainant was told by Ms. Rubeo that the center was "going to make some way in order to have the black female." RR 110. But the Commission made no finding either way as to the credibility of this testimony and we, of course, cannot determine its credibility. *Id.* By merely reversing, rather than reversing and remanding the case, we deprive the Commission, *which is empowered to make such a determination,* of the opportunity to do so. Moreover, under the legal test it incorrectly applied, the Commission in making findings relative to Complainant's prima facie burden, would have had no reason to examine the testimony for evidence of circumstances indicating an inference of discrimination. Thus, I would remand the case and give the Commission the opportunity to do so now.