**CITY OF PITTSBURGH COMMISSION ON HUMAN RELATIONS; Carolyn Fisher and Edward Fisher; and the Fair Housing Partnership, Inc.,**

v.

**Nello DeFELICE and Lidia DeFelice, Appellants.**

Commonwealth Court of Pennsylvania.

Argued May 7, 2001.
Decided Aug. 14, 2001.

Timothy G. Uhrich, Pittsburgh, for appellant.

Steven M. Paikin, Pittsburgh, for appellee, Fair Housing Partnership.

Jeffrey J. Ruder, Pittsburgh, for appellee, Carolyn & Edward Fisher.

Before DOYLE, President Judge, and KELLEY, J., and FLAHERTY, Senior Judge.

KELLEY, Judge.

Nello DeFelice and Lidia DeFelice (the DeFelices) appeal from a final order of the Court of Common Pleas of Allegheny County (trial court) which affirmed a decision of the City of Pittsburgh Commission of Human Relations (Commission) which awarded damages and attorney fees to Carolyn Fisher, Edward Fisher (the Fishers) and the Fair Housing Partnership, Inc. (FHP) (collectively, Appellees) upon determining that the DeFelices had intentionally and unlawfully discriminated against them on the basis of race. We affirm.

In October 1997, the DeFelices purchased a property located next door to their home, which they immediately put on the market for rent. Later that month, the Fishers, an African–American couple, contacted the DeFelices about renting the property. The Fishers told the DeFelices that three persons would be residing in the home and that their wheelchair bound adult son, who would not be living at the rental home, would be visiting and would need to be able to get into and out of the building. The Fishers were shown the property, quoted a rental price of $850 per month, requested and were given a rental application.

The Fishers were dissatisfied with the way they were treated by the DeFelices

during their visit of the rental property and felt discriminated on the basis of race, familial status and handicap. The Fishers did not submit the rental application. Instead, the Fishers contacted FHP, who in turn sent two testers, one African American, the other Caucasian, to make inquires about the rental property. FHP told both testers to advise the DeFelices that a family of three would be occupying the premises. The African American tester was quoted a price of $950 a month plus utilities. The Caucasian tester was quoted a price of $700 a month plus utilities.

Based upon FHP's investigation, Appellees filed a complaint with the Commission alleging that the DeFelices had engaged in unlawful housing practices by discriminating on the basis of race, familial status and handicap, in violation of Section 659 of the Pittsburgh Code of Ordinances (Pittsburgh Code).[1] The Commission held a public hearing on August 13, 1998, and subsequently conducted a damages hearing on March 26, 1999.[2] Based upon the testimony and evidence presented, the Commission concluded that the DeFelices had intentionally and unlawfully discriminated against Appellees on the basis of race in violation of Section 659 of the Pittsburgh Code. The Commission concluded that the DeFelices did not discriminate on the basis of familial status or handicap. By decision dated December 6, 1999, the Commission ordered the DeFelices to comply with all provisions of the Pittsburgh Code prohibiting unlawful housing practices and ordered them to pay damages and attorney fees to Appellees.[3]

1. Specifically, Section 659.03(a) of the Pittsburgh Code provides that:

It shall be an unlawful housing practice....
(a) For any owner, real estate broker or any other person to refuse to .... lease, sublease [or] rent, .... or to refuse to negotiate for the .... lease, sublease [or] rental .... [of] any housing accommodation to any person, or to represent that any housing accommodation is not available for .... lease, sublease [or] rental .... when in fact it is so available, or otherwise to deny or withhold any housing accommodation from any person because of race, color, .... ancestry [or] national origin....
In addition, Section 659.03(b) provides that it shall be an unlawful housing practice "[f]or any person, including any owner or real estate broker, to include in the terms, conditions or privileges of .... lease, sublease [or] rental .... of any housing accommodation any clause, condition or restriction discriminating against .... any person in the use or occupancy of such housing accommodation because of race, color, .... ancestry [or] national origin...."

2. The authority of the Commission to conduct hearings on allegations of housing discrimination derives from Section 655.06(a) of the Pittsburgh Code which states, in pertinent part, that "[i]n any case of failure to eliminate an alleged unlawful housing practice charged under Chapter 659.03 of the Code, and where the facts so warrant, the Commission shall proceed to a public hearing."

3. The authority of the Commission to impose fines and attorneys fees upon a finding of housing discrimination derives from Section 655.06(d) of the Pittsburgh Code which states, in pertinent part:

If upon all evidence presented the Commission finds that the respondent has engaged or is engaging in an unlawful practice, it shall state its findings of fact in writing and shall issue and cause to be served upon such respondent an order in writing as the facts warrant to effectuate the purposes of this article. Such order may require the respondent to cease and desist from such unlawful practice, to provide monetary relief in the form of all actual damages, to pay reasonable attorney fees .... [and] the payment of any other verifiable, reasonable out-of-pocket expenses caused by such unlawful discriminatory practice, as, in the judgment of the Commission, will effectuate the purposes of this article and are warranted by the facts presented at the hearing.....
In addition, Section 655.06(e)(5) of the Pittsburgh Code states, in pertinent part, that "[i]f, after a hearing, the Commission finds that a respondent engaged in or is engaging in any

The DeFelices appealed the Commission's decision to the trial court, which affirmed. The DeFelices then filed the present appeal.[4]

 We initially note that this Court's scope of review, where, as here, the trial court did not take additional evidence, is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether the findings of fact necessary to support the adjudication are supported by substantial evidence. *Pittsburgh Commission on Human Relations v. U.S. Steel Corporation*, 127 Pa.Cmwlth. 646, 562 A.2d 940 (1989), *petition for allowance of appeal denied*, 524 Pa. 631, 574 A.2d 72 (1990); *Reed v. Miller Printing Equipment Division of Western Gear Corporation*, 75 Pa. Cmwlth. 360, 462 A.2d 292 (1983). The task of weighing the evidence, both direct and circumstantial, to credit and discredit testimony, to draw inferences and make ultimate findings of fact as to whether a violation of the Pittsburgh Code occurred is for the Commission. *U.S. Steel Corpo-*

*ration.* In addition, judicial discretion may not be substituted for administrative discretion, absent bad faith, fraud, capricious action or abuse of power by the Commission. *Id.*

In the instant appeal, the DeFelices have presented the following issues for our review:

1. Whether the DeFelices discriminated against the Fishers or the FHP testers in the rental of a housing unit when the evidence clearly showed that neither the Fishers nor the testers were determined to be qualified to rent the property and were never denied the opportunity to rent the property.

2. Whether fees and costs awarded to counsels for Appellees were reasonable and warranted in relation to the harm complained and to the scope of services performed by counsel for Appellees.

The DeFelices first contend that the trial court's decision, affirming the Com-

---

unlawful discriminatory practice as defined in this article, the Commission may award attorney fees and costs to the complainant on whose behalf the action was commenced." Finally, Section 655.06(f) of the Pittsburgh Code further provides:

(f) The Commission may:

(1) Award damages caused by humiliation or embarrassment;

(2) Assess a civil penalty against the respondent:

A. In an amount of not more than $10,000 if the respondent has not been adjudged to have committed any prior discriminatory housing practice.

4. As a preliminary matter we note that on January 8, 2000, pursuant to Rule 1972(5) of the Pennsylvania Rules of Appellate Procedure, Appellees filed a motion to dismiss the instant appeal on the basis that the DeFelices' challenges to the award of attorney fees and the FHP's testing procedures are waived as they were not raised before the trial court. By order of this Court dated January 29,

2000, Appellees' motion to dismiss was listed to be disposed of with the merits of this appeal.

Rule 1972(5) of the Pennsylvania Rules of Appellate Procedure provides, in pertinent part, that "[a]ny party may move .... [t]o dismiss [an appeal] for failure to preserve the question below, or because the right to an appeal has been otherwise waived." Thus, this rule does not deal with an appellate court's refusal to consider those of a number of claims raised on appeal which were not properly preserved for appellate review. Rather, this rule contemplates the outright dismissal of an appeal because none of the claims raised therein were properly preserved for appellate review.

The certified record in this case demonstrates that the DeFelices preserved for appellate review at least one of the two allegations of error raised in the instant appeal. As a result, Appellees' invocation of Rule 1972(5) is not appropriate, and the motion to dismiss is denied.

mission's determination that the DeFelices discriminated against the Fishers or the FHP testers in the rental of a housing unit, is not supported by substantial evidence. In particular, the DeFelices assert that the evidence presented clearly shows that neither the Fishers nor the testers were determined to be qualified to rent the property and were never denied the opportunity to rent the property. We disagree.

■■■ As noted above, the Commission acted under the Pittsburgh Code, which applies to discriminatory practices that occur within the territorial limits of the City of Pittsburgh. *See* Section 651.03 of the Pittsburgh Code ("This article applies to discriminatory practices, including but not limited to discrimination in .... housing and public accommodations, which occur within the territorial limits of the City...."); *U.S. Steel Corporation*, 562 A.2d at 949 ("We acknowledge that the Commission acted under the Ordinance, which applies to discriminatory practices which occur within the territorial limits of the City of Pittsburgh.") (footnote omitted). As also noted above, Section 651.03 of the Pittsburgh Code prohibits, *inter alia*, discrimination in housing on the basis of race, color or national origin.[5]

---

**5.** The authority of the City of Pittsburgh to enact and enforce the relevant provisions of the Pittsburgh Code is derived from the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–963. In particular, Section 2(b) of the PHRA provides, in pertinent part:

> (b) It is hereby declared to be the public policy of this Commonwealth .... to assure equal opportunities to all individuals and to safeguard their rights .... to secure housing accommodation .... regardless of race, color, .... ancestry .... [or] national origin....
>
> (c) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, prosperity, health and peace of the people of the Commonwealth of Pennsylvania.

43 P.S. § 952(b), (c).

In turn, Section 3 of the PHRA provides, in pertinent part, that "[t]he opportunity for an individual .... to obtain all the accommodations, advantages, facilities and privileges .... of any housing accommodation .... without discrimination because of race, color, .... ancestry .... [or] national origin .... is hereby recognized as and declared to be a civil right which shall be enforceable as set forth in this act." 43 P.S. § 953.

In order to effectuate the provisions of PHRA, the Pennsylvania Human Rights Commission (PHRC), a departmental administrative commission in the Governor's Office, was established. *See* Section 6 of the PHRA, 43 P.S. § 956. Under Section 7 of the PHRA, the PHRC is empowered, *inter alia*, "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices." 43 P.S. § 957(f). However, as the Pennsylvania Supreme Court has recognized, "[t]he power of the [PHRC] results from the legislature's delegation of such power. As such the limits of that power must be strictly construed." *Murphy v. Commonwealth*, 506 Pa. 549, 557, 486 A.2d 388, 392, *appeal dismissed*, 471 U.S. 1132, 105 S.Ct. 2669, 86 L.Ed.2d 689 (1985).

Finally, Section 12.1 of the PHRA, *added by* Act of January 24, 1966, P.L. (1965) 1523, *as amended*, 43 P.S. § 962.1, empowers local political subdivisions, such as the City of Pittsburgh, to establish local human relations commissions. In particular, Section 12.1(a), (d) provides, in pertinent part:

> (a) The legislative body of a political subdivision may, by ordinance or resolution, authorize the establishment of membership in and support of a Local Human Relations Commission....
>
> * * *
>
> (d) The legislative bodies of political subdivisions shall have the authority to grant to local commissions powers and duties similar to those now exercised by the [PHRC] under the provisions of this act.

43 P.S. § 962.1(a), (d).

However, as with the powers conferred to the PHRC, the powers conferred to these local legislative bodies by the foregoing provisions of the PHRA are circumscribed. Indeed, as this Court has previously noted:

> [I]t is clear from this language of [Section 12.1 of the PHRA] that the General Assembly, while desirous of extending to munici-

■ It is well settled that the party asserting discrimination bears the burden of proving a prima facie case of discrimination. *Farrell Area School District v. Deiger*, 88 Pa.Cmwlth. 431, 490 A.2d 474 (1985). Once a prima facie case is established, a rebuttable presumption of discrimination arises. *Id.* The burden then shifts to the defendant to show some legitimate, nondiscriminatory reason for its action. ˙ *Id.*

For purposes of establishing a prima facie case of housing discrimination, the parties herein rely upon the test set forth in *Allison v. Pennsylvania Human Relations Commission*, 716 A.2d 689 (Pa. Cmwlth.1998), *petition for allowance of appeal denied*, —— Pa. ——, —— A.2d ——, 1999 WL 105212 (No. 551 W.D. Alloc. Dkt.1998, filed March 3, 1999). In *Allison*, we held that a prima facie case of housing discrimination requires a showing that: (1) the prospective tenant was a member of a protected class, (2) the landlord was aware of the tenant's race, (3) the tenant was qualified to rent the property in question, (4) the tenant was denied the opportunity to rent the apartment, and (5)

the apartment remained available for rent.[6] *Id.* at 692. In this appeal, the DeFelices assert that Appellees have failed to establish the third and fourth prongs of the *Allison* test.

However, the elements of a prima facie case of discrimination as articulated in *Allison* are not perfectly suited to the discrimination claim herein. *Allison* involved a *refusal* to rent in violation of Section 5(h)(1) of the PHRA. Section 5(h)(1) provides that it shall be unlawful for any person to "[r]efuse to .... lease .... or otherwise to deny or withhold any housing accommodation .... from any person because of the race, color, familial status, age, religious creed, ancestry, sex, national origin or handicap or disability of any person, prospective owner, occupant or user of such housing accommodation...." 43 P.S. § 955(h)(1). Although Section 5(h)(1) is similar to Section 659.03(a) of the Pittsburgh Code, the discrimination involved herein is not the "refusal" to rent, but rather discrimination in the terms and conditions of rental under Section 659.03(b) of

palities the right to establish local commissions, did not intend to extend to local commissions powers or duties above and beyond those possessed by the [PHRC]..... *City of Pittsburgh Commission on Human Relations v. MacBeth*, 37 Pa.Cmwlth. 636, 391 A.2d 1109, 1110 (1978).

**6.** A four-pronged test for establishing a prima facie case of employment discrimination was established by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As this Court has previously noted, "[i]n *General Electric Corp. v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), our Supreme Court, in addressing the allocation of the burdens of proof and the establishment of a prima facie case of discrimination in employment under Pennsylvania law, expressed approval for the rationale of the standard enunciated by the United States Supreme

Court in *McDonnell Douglas Corp ....*" *Reed*, 462 A.2d at 293. In adopting the four-pronged test, this Court noted:

[W]e take care to point out that an employee alleging discrimination is not necessarily restricted to the specific criteria set forth in *McDonnell Douglas* in order to establish a prima facie case. Our Supreme Court recognized as much when, in adopting the rationale of the standard, it stated that "the factors found in *McDonnell* to be sufficient to make out a case are not unwavering absolutes." *General Electric*, 469 Pa. at 304–5 n. 11, 365 A.2d at 656 n. 11. Thus, the standard is in actuality a flexible one contingent on the peculiar factual details of a given scenario. *McDonnell Douglas; General Electric ....* *Reed*, 462 A.2d at 294. In *Allison*, this Court "adapted" the factors used in the employment discrimination context to a case involving allegations of housing discrimination. 716 A.2d at 692.

the Pittsburgh Code.[7]

■ Although we have found no case law in Pennsylvania specifically addressing the prohibition contained in Section 659.03(b) of the Pittsburgh Code, this provision is similar to Section 3604(b) of the Fair Housing Act (FHA), 42 U.S.C. § 3604(b). Section 3604(b) of the FHA provides that it shall be unlawful "[t]o discriminate against any person in the *terms, conditions*, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, .... or national origin." (Emphasis added).[8]

■ To establish a *prima facie* case predicated upon Section 3604(b) of the FHA,[9] the plaintiff must make a modest showing that a member of a statutorily protected class was not offered the same terms, conditions or privileges of rental of a dwelling or not provided the same services or facilities in connection therewith made available to others under circumstances giving rise to a reasonable inference of prohibited discrimination. *See United States v. Balistrieri*, 981 F.2d 916, 929 (7th Cir.1992), *cert. denied*, 510 U.S. 812, 114 S.Ct. 58, 126 L.Ed.2d 28 (1993). In *Balistrieri*, the federal government brought an action against an apartment complex owner and the owner's rental

---

7. Section 5(h)(3) of the PHRA contains a similar provision which states, in pertinent part, that "[i]t shall be an unlawful discriminatory practice .... [f]or any person to .... [d]iscriminate against any person in the terms or conditions of selling or leasing any housing accommodation .... because of the race, color, .... ancestry, .... [or] national origin .... of any person. ...." 43 P.S. § 955(h)(3). Likewise, Section 45 .7 of the PHRC's regulations states, in pertinent part:

It is an unlawful discriminatory practice for a person, because of the protected class of a person applying for purchase or rent .... to do one or more of the following:

(1) Offer or impose different or special terms or conditions in connection with the selling, renting or leasing of .... housing accommodation.

* * *

(3) Offer or impose different or special terms or conditions in connection with the tenancy, ownership or occupancy of any housing accommodation....

(4) Offer or impose different or special terms or conditions in the furnishing of facilities of housing accommodation....

(5) Offer or impose different or special terms and conditions in making available any real estate related transaction.....

16 Pa.Code § 45.7(1), (3), (4), (5).

Because the provisions of Section 659.03(b) of the Pittsburgh Code are consonant with the provisions of Section 5(h)(3) of the PHRA, their enactment and enforcement are proper under the authority conferred by Section 12.1

of the PHRA. *MacBeth.* In addition, in interpreting the provisions of Section 659.03(b) of the Pittsburgh Code, it is appropriate to examine the case law which has developed interpreting Section 5(h)(3) of the PHRA. *Id.* However, as with Section 659.03(b) of the Pittsburgh Code, there is a paucity of case law interpreting the provisions of either Section 5(h)(3) of the PHRA or Section 45.7 of the PHRC's regulations.

8. It is true that, in interpreting the provisions of the PHRA, this Court is not bound by federal court decisions interpreting the provisions of the federal Civil Rights Act of 1964. *See, e.g., Harrisburg School District v. Pennsylvania Human Relations Commission*, 77 Pa. Cmwlth. 594, 466 A.2d 760 (1983); *Anderson v. Upper Bucks County Area Vocational Technical School*, 30 Pa.Cmwlth. 103, 373 A.2d 126 (1977). However, in a case of first impression, it is appropriate to look to federal decisions involving similar federal statutes for guidance. *See, e.g., Imler v. Hollidaysburg American Legion Ambulance Service*, 731 A.2d 169 (Pa.Super.), *petition for allowance of appeal denied*, 560 Pa. 706, 743 A.2d 920 (1999); *Commonwealth v. Pennsylvania Labor Relations Board*, 107 Pa.Cmwlth. 132, 527 A.2d 1097 (1987).

9. Very few cases have dealt explicitly with claims arising under Section 3604(b) of the FHA. More common are cases arising under Section 3604(a) in which a person is denied the opportunity to purchase or rent housing.

agent for violation of FHA provisions prohibiting racial discrimination in the terms or conditions for housing rental. The Seventh Circuit Court of Appeals determined that by offering apartments to black testers at higher rental rates than those offered to white testers, the defendants had discriminated in the terms of rentals in violation of Section 3604(b) of the FHA. *Id.*

■ Applying this federal precedent to the similar provisions of Section 659.03(b) of the Pittsburgh Code, a prima facie case of discrimination has been shown in this case. The Fishers were African–American and, hence, are members of a protected class. The Fishers and the FHP testers were similarly situated in their pre-application qualifications except for their membership in a protected class. The Fishers and the African–American FHP tester were quoted substantially higher rentals than the Caucasian FHP tester. The Fishers were quoted a rental price of $850 per month and the African American tester was quoted a price of $950 per month, while the Caucasian tester was quoted a price of $700 per month on the same rental property. By establishing that the DeFelices offered disparate rental rates to persons similarly situated except for race, the Appellees established a prima facie case that the DeFelices had engaged in unlawful housing practices in violation of Section 659.03(b) of the Pittsburgh Code. *See, e.g., Balistrieri.*

Having established a prima facie case of housing discrimination, the burden then shifted to the DeFelices to establish a legitimate, non-discriminatory reason for their actions. *Deiger.* The DeFelices testified that the prospective renters were not similarly situated, and that the disparity in

rental rates was based upon the potential number of persons who would occupy the premises due to the increased usage of utilities.

However, the Commission did not find this evidence credible. The Commission found the DeFelices' testimony inconsistent in that the rental prices quoted to the FHP testers were not inclusive, but rather required the tenant to pay the utilities. The Commission also found that the potential number of persons who would occupy the premises was three.

As noted above, the task of weighing the evidence, both direct and circumstantial, to credit and discredit testimony, to draw inferences and make ultimate findings of fact as to whether a violation of the Pittsburgh Code occurred is for the Commission. *U.S. Steel Corporation.* Based upon our review of the record, the Commission's findings are supported by substantial evidence. We, therefore, conclude that the Commission did not err in its determination that the DeFelices had engaged in unlawful housing practices in violation of Section 659 of the Pittsburgh Code.

■ Finally, the DeFelices also contend that the trial court erred in affirming the Commission's award of attorney fees and costs to the counsel for Appellees. In particular, the DeFelices assert that fees and costs should not have been awarded because there is insufficient evidence to support a finding of discrimination. In the alternative, even if the alleged discrimination has been shown, the DeFelices claim that the fees and costs awarded in this case should be reduced.[10]

10. In their appellate brief, Appellees assert, *inter alia,* that the DeFelices have waived any claims of error with respect to the award of attorney fees and costs, citing Section 302(a)

of the Pennsylvania Rules of Appellate Procedure which provides that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." In sup-

With respect to the former assertion, as noted above, there is substantial evidence to support a determination that the DeFelices had engaged in unlawful housing practices in violation of Section 659 of the Pittsburgh Code. With respect to the latter assertion, we do not agree.

This court's scope of review of the award of counsel fees and costs in a case such as this is quite limited. As noted above, "[j]udicial discretion may not be substituted for administrative discretion, absent bad faith, fraud, capricious action or an abuse of power by an administrative agency." *U.S. Steel Corporation*, 562 A.2d at 949 (citation omitted).

Section 655.06(d) and (e)(5) of the Pittsburgh Code specifically grant the Commission the discretion to award attorney fees and costs to a complainant in proceedings commenced before that body. The DeFelices have failed to allege or demonstrate that the Commission's award of fees and costs in this case was the product of such "bad faith, fraud, capricious action or an abuse of power". In short, the trial court did not err in affirming the Commission's actions in this regard.[11]

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this *14th* day of *August*, 2001, the order of the Court of Common Pleas of Allegheny County, at No. SA 00–24 dated July 20, 2000, is affirmed. The Motion to Dismiss filed by the Carolyn Fisher and Edward Fisher and the Fair Housing Partnership, Inc. is denied.

---

port, Appellees refer to a document contained in the supplemental reproduced record that Appellees filed in this Court. However, the certified record in this case does not contain this document.

As the Pennsylvania Superior Court has noted, "[i]t is beyond cavil that an appellate court is limited to considering only those facts which have been duly certified in the record on appeal. *Commonwealth v. Osellanie,* [408 Pa.Super. 472, 597 A.2d 130, 131 (1991)]. For purposes of appellate review, what is not of record does not exist. *Frank v. Frank,* [402 Pa.Super. 458, 587 A.2d 340, 342–43 n. 5 (1991)]." *Spink v. Spink,* 422 Pa.Super. 126, 619 A.2d 277, 280 n. 1 (1992) (citations omitted). Thus, although this document is contained in the supplemental reproduced record, it cannot be relied upon in this appeal because it is not a part of the certified record.

On the basis of the record as certified, we are unable to ascertain whether or not issue of attorney fees and costs was raised before the trial court. For purposes of this appeal, we will resolve the doubt in favor of the DeFelices and assume that the issue was raised and address the merits of the DeFelices' allegations of error.

11. It must be noted that in *MacBeth*, this Court reversed the award of attorney fees and costs pursuant to the provisions of the Pittsburgh Code because a prior version of the PHRA did not provide for the award of such fees and costs. 391 A.2d at 1111–1112. However, subsequent to our opinion in *MacBeth*, the General Assembly amended the PHRA in 1991 to include Section 9(f.1), 43 P.S. § 959(f.1), which grants the PHRC the same discretion to award attorney fees and costs in proceedings commenced before that body. As a result, the determination by this Court in *MacBeth* does not preclude the award of such fees and costs in this case.