IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kurtis Stover,                                          :
                                    Petitioner          :
                                                        :
                    v.                                  :      No.  1152 C.D. 2021
                                                        :      Submitted:  March 25, 2022
Don's Performance Corner, Inc.                          :
(Workers' Compensation Appeal                           :
Board),                                                 :
                                    Respondent          :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                                FILED:  June 27, 2022


        Kurtis Stover (Claimant) petitions *pro se* for review of a September 9, 2021
order of the Workers' Compensation Appeal Board (Board) affirming a Workers'
Compensation Judge's (WCJ) denial of his petition for benefits (Claim Petition)
under the Workers' Compensation Act (Act).[1]  In this Court, Claimant contends
certain factual findings made by the WCJ are not supported by substantial record
evidence.  He also attempts to assert various new theories of relief, including claims
for wrongful termination and disability discrimination.  For the reasons given below,
we affirm the Board.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4; 2501-2710.

## I.  BACKGROUND

Claimant reported for his first day of work with Don's Performance Corner (Employer), an automotive repair shop, on December 10, 2018.  Don Reem (Mr. Reem), owner of Employer, hired Claimant as a mechanic with the expectation he would perform transmission work.

Claimant's first assignment was to remove a transmission from a Jeep that was raised on a lift.  To perform this task, Claimant used a hydraulic jack designed to cradle the transmission from underneath and lower it for removal.  According to Claimant, while he was lowering the transmission, the jack "gave out," causing the transmission to fall and momentarily pin his head against the frame of the Jeep. Certified Record (C.R.) Item No. 19, Notes of Testimony (N.T.) 3/12/19, at 15. Despite the weight of the transmission,[2] Claimant contends he was able to "wrap [his] arms around" it and extricate himself.  *Id.*  This resulted in a "laceration" across Claimant's forehead that bled down his face.  C.R. Item No. 7, 1/15/21 Order of WCJ (Final Decision) at 3, 8, ¶¶ 4, 55.  Claimant also said he felt pressure in his back at the moment of the injury.

Claimant went to lunch after this incident; upon his return, Mr. Reem fired him.  Cynthia Reem (Mrs. Reem), who handles administrative responsibilities for Employer and was present when Mr. Reem terminated Claimant's employment, testified that Claimant did not mention any workplace injury until December 11, 2018, when he called to report a "possible concussion and back injury."  Final Decision at 7, ¶¶ 42-43.

---

[2] Mr. Reem, whose testimony was deemed credible by the WCJ, *see* 1/15/21 Order of WCJ (Final Decision) at 9, ¶ 58, testified that the type of transmission found in the Jeep weighed between 275 and 400 pounds, depending on whether certain ancillary parts had been removed.  Certified Record (C.R.) Item No. 14, N.T. 2/5/20, at 28.

In the Claim Petition, Claimant alleged the incident with the transmission resulted in various low-back conditions, including "lumbar sprain . . . lumbar radiculopathy, [and] aggravation of a pre[]existing sacroiliac, sciatica condition."[3] C.R. Item No. 1, 8/7/19 Claim Petition. Based on these conditions, Claimant sought total disability benefits under the Act,[4] claiming he could no longer stand or sit in one place for long without pain. *Id.*; Final Decision at 3, ¶ 9. In his testimony before the WCJ, Claimant acknowledged he had received intermittent medical treatment for sciatica for approximately 10 years before the alleged work injury, including roughly 40 trips to the hospital to treat related pain. However, he claimed the pain relating to his sciatica was isolated in his left hip, while the pain stemming from the work injury was "on his right side." Final Decision at 5, ¶ 24. Despite this claim, Claimant also testified that he lost sensation in his *left* leg for 30 days after the injury.

Claimant also admitted to seeking treatment for low back pain on December 6, 2018, four days before his injury. He claimed he strained his back while lifting a 100-pound steel bar he intended to take to a scrap yard. *Id.* at 3-4, ¶ 10. Claimant maintained the pain he experienced after the work injury was far greater than that occasioned by lifting the steel bar.

---

[3] The "lumbar" region of the back is "between the thorax and the pelvis." *Lumbar*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1062 (33d ed. 2020). "Lumbar radiculopathy" refers to "any disease of lumbar nerve roots, such as from disk herniation or compression by a tumor or bony spur[.]" *Id.* at 1547. "Sacroiliac" is a compound term referring to the "sacrum" and the "ilium." *Id.* at 1635. The "sacrum" is the "triangular bone just below the lumbar vertebrae." *Id.* The "ilium" is the upper portion of the coxal bone, which comprises part of the hips. *Id.* at 903. "Sciatica" is "a syndrome characterized by pain radiating from the back into the buttock and along the posterior or lateral aspect of the lower limb[.]" *Id.* at 1650.

[4] "Under workers' compensation law, 'disability' is defined as the loss of earning power attributable to the work-related injury." *Weismantle v. Workers' Comp. Appeal Bd. (Lucent Techs.)*, 926 A.2d 1236, 1240 n.10 (Pa. Cmwlth. 2007) (citation omitted). "Total" disability, then, is a complete loss of one's earning power.

Employer and Claimant presented competing medical testimony to the WCJ.[5] Claimant relied on the testimony of Jesse Bible, M.D. (Dr. Bible). Dr. Bible examined Claimant on one occasion and recorded no abnormal objective findings. However, based on Claimant's subjective complaints of pain, Dr. Bible concluded Claimant's alleged work injury resulted in "aggravation of a pre[]existing . . . lower back condition." *Id.* at 5, ¶ 31; *see also* C.R. Item No. 18, Deposition of Jesse Bible, M.D. (Dr. Bible Deposition), at 19. Dr. Bible admitted he had no knowledge of Claimant's medical history or any past treatment he had received for chronic back problems; his sole basis for diagnosing Claimant with a "pre[]existing lower back condition" was Claimant's self-described medical history. Final Decision at 6, ¶ 34. Similarly, Dr. Bible relied exclusively on Claimant's account of the work injury in reaching his conclusion that Claimant's back pain was caused by the injury—there were no specific objective findings to confirm this account. He conceded that, if Claimant misrepresented the mechanism of injury, he would be compelled to change his opinion on causation. Final Decision at 6, ¶¶ 34-35.

Employer presented the testimony of Amir Fayyazi, M.D. (Dr. Fayyazi). Unlike Dr. Bible, Dr. Fayyazi conducted a comprehensive review of Claimant's medical history, as expressed in various hospital records and notes of treatment. Dr. Fayyazi noted Claimant's records indicated he sought treatment for low back pain as early as June of 2010. Dr. Fayyazi also highlighted that Claimant sought treatment at "UPMC Clinical" on December 6, 2018, four days before his injury. Final Decision at 7, ¶ 48; C.R. Item No. 22, Deposition of Amir Fayyazi, M.D. (Dr. Fayyazi Deposition), at 22. A magnetic resonance imaging study (MRI) taken on that date revealed "mild to moderate degenerative changes" to Claimant's lumbar

---

[5] Both parties submitted deposition transcripts in lieu of live testimony from their respective physicians.

spine. Final Decision at 7, ¶ 48. Dr. Fayyazi also physically examined Claimant and concluded he possessed normal strength and range of motion for his age, with the exception of some limitation to his back extension. *Id.* at 8, ¶ 51.

Based on the results of his physical examination and his review of Claimant's medical history, Dr. Fayyazi concluded Claimant did not suffer any work injury on December 10, 2018. He noted Claimant's subjective complaints of pain were inconsistent with the available objective evidence, which included numerous imaging reports from before and after Claimant's alleged work injury. *Id.* at 7-8, ¶¶ 46, 48, 50, 52. These reports reflected gradual, degenerative changes in Claimant's spine, rather than the acute trauma Claimant alleged. Dr. Fayyazi opined that if Claimant's symptoms were as severe as he claimed, more "stenosis"[6] would appear on the imaging reports; Claimant would also have "more limited range of motion." *Id.* at 8, ¶ 53. Finally, Dr. Fayyazi added that, if Claimant suffered any sort of injury on December 10, 2018, he had fully recovered from that injury by December 17, 2019, the date of Dr. Fayyazi's physical examination.

On January 15, 2021, the WCJ issued the Final Decision denying the Claim Petition. The WCJ believed Claimant suffered a head injury of some kind on December 6, 2018, but otherwise concluded Claimant had "embellished his testimony." *Id.* at 9, ¶ 57. Primarily, the WCJ could not "accept that the [alleged work injury was] the triggering event for ongoing back problems when [Claimant] had an MRI of his low back less than a week before the work event." *Id.*[7] The WCJ

---

[6] "Spinal stenosis" refers to "narrowing of the vertebral canal," or "encroachment of bone upon the space" through which spinal nerves pass. *Stenosis, spinal*, DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1740 (33d ed. 2020).

[7] The WCJ also pointed to inconsistencies in Claimant's testimony given at multiple hearings over the life of this matter. Specifically, Claimant initially testified that Mr. Reem was simply "angry"

5

credited the testimony of Mr. Reem "based on [his] personal observations of [Mr. Reem's] comportment and demeanor at hearing," *id.* at 9, ¶ 58, and rendered a similar finding with respect to Mrs. Reem. *Id.* at 9, ¶ 59. The WCJ credited the testimony of Dr. Fayyazi over that of Dr. Bible, reasoning that Dr. Bible's opinion relied heavily on information from "a generally unreliable Claimant." *Id.* at 9, ¶ 60.a. The WCJ also noted Dr. Bible failed to address the fact that Claimant sought treatment for low back issues just four days before the alleged work injury, and that Dr. Bible conceded physical examinations of Claimant revealed no objective symptoms. Ultimately, the WCJ concluded that "[n]o compensable work injury was sustained [on] December 10, 2018." *Id.* at 9, ¶ 62.

The Board affirmed this decision, rejecting arguments from Claimant that the WCJ failed to issue a reasoned decision within the meaning of Section 422(a) of the Act, 77 P.S. § 834, and that the WCJ's credibility determinations should be overturned. Claimant now appeals to this Court *pro se*.[8]

## II. SCOPE AND STANDARD OF REVIEW

We review the Board's order for violations of constitutional rights, violations of agency practice and procedure, and other legal errors. 2 Pa.C.S. § 704. Further, we review whether substantial evidence supports the findings of fact necessary to sustain the Board's decision. *Id.*

"Substantial evidence" needed to support factual findings is "such relevant evidence [as] a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth.

---

with him during the conversation that led to his termination, but later claimed Mr. Reem "punched him in the left arm." Final Decision at 9, ¶ 57. At a later date, Claimant added that Mr. Reem had him followed when he went to lunch on December 10, 2018. *Id.*

[8] The record indicates Claimant was represented by counsel through his appeal to the Board.

2008). In performing its substantial evidence analysis, this Court views the evidence in the light most favorable to the prevailing party below. *Id.* Furthermore, "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998) (citation omitted).

This Court affords great deference to the credibility determinations of WCJs. Such determinations will only be overturned if they are "arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [them] irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008).

### III. ISSUES PRESENTED

Pursuant to our duty to liberally construe *pro se* filings, *see Minor v. Kraynak*, 155 A.3d 114, 120 n.7 (Pa. Cmwlth. 2017), we glean the following arguments from Claimant's brief:

1. Claimant seeks to raise a host of new theories of relief against Employer, including claims for wrongful discharge, intentional infliction of emotional distress, and disability discrimination in violation of the Americans with Disabilities Act (ADA);[9]

2. Claimant contends his claim could have been proven if his attorney had not prevented him from introducing "a pile of [unspecified] evidence that corroborate[s] his story." Claimant's Br. at 29; and

---

[9] 42 U.S.C. §§ 12111-12213.

3. Claimant argues the credibility determinations contained in paragraphs 57, 58, and 60 of the WCJ's Final Decision were not "reasoned" within the meaning of Section 422(a) of the Act.

For its part, Employer responds that this Court cannot recognize new causes of action or evidence for the first time on appeal, and that the WCJ supplied adequate reasoning to support his assessments of witness credibility.

We address these issues in turn.[10]

## IV. DISCUSSION

### A. This Court cannot consider new theories of relief or evidence not presented in the proceedings below.

Claimant devotes a substantial portion of his brief to asserting an array of new causes of action against Employer, including wrongful discharge, intentional infliction of emotional distress, and disability discrimination in violation of the ADA. *See* Claimant's Br. at 7-9, 17-34, 37-42. However, "it is axiomatic that 'issues not raised in the lower tribunal are waived and cannot be raised for the first time on appeal.'" *Kennett Consol. Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 228 A.3d 29, 42 (Pa. Cmwlth. 2020) (quoting Pa. R.A.P. 302(a)) (brackets in internal quotation omitted). Claimant's attempted new causes of action are also outside the scope of the Pennsylvania workers' compensation scheme, which provides the exclusive remedy for employees who suffer an "injury . . . arising in the course of [their] employment and related thereto." *See* Section 301(c) of the Act, 77 P.S. § 411; *see also* Section 303 of the Act, 77 P.S. § 481 (providing for exclusivity

___

[10] At various points in his brief, Claimant also argues the WCJ denied him the right to represent himself after he indicated his desire to do so "on [the] record." Claimant's Br. at 8, 30. After reviewing the certified record received from the Board, this Court has found no indication that Claimant ever asked to represent himself or discharge his attorney. We therefore reject this argument as meritless.

8

of workers' compensation remedy for work-related injuries). Accordingly, we decline to reverse the Board on the basis of these theories.

Similarly, we cannot consider new evidence for the first time on appeal. Our review is limited to the evidentiary record presented to the WCJ. *City of Pittsburgh Comm'n on Hum. Rels. v. DeFelice*, 782 A.2d 586, 593 n.10 (Pa. Cmwlth. 2001) ("For purposes of appellate review, what is not of record does not exist.") (citation omitted). We therefore refuse to consider the multitude of new facts Claimant attempts to weave into his appellate arguments, *see, e.g.*, Claimant's Br. at 31-32 (attempting to introduce information regarding transmission removal from "jeepforums.com"), and reject out-of-hand his contention that we should reverse because he possesses "a pile of evidence that corroborate[s] his story" that was never presented to the WCJ. Claimant's Br. at 29.

## B. The WCJ's credibility determinations were "reasoned" within the meaning of Section 422(a) of the Act.

Under Section 422(a) of the Act, WCJs must provide a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decision[.]" 77 P.S. § 834. Claimant contends the determinations of witness credibility contained in paragraphs 57, 58, and 60 do not meet this standard. We disagree.

In paragraph 57, the WCJ explained why he found Claimant incredible. The WCJ's reasoning in this regard is more than adequate. First, he outlines how Claimant's testimony conveniently evolved over the life of the case in an apparent attempt to cast Employer in a negative light. Then, he points to the inherent implausibility of Claimant's low back pain stemming entirely from the alleged work

9

injury, given that Claimant sought an MRI of his lower back just four days before the injury. These observations suffice to support the WCJ's rejection of Claimant's testimony. *See Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1053 (Pa. 2003) (noting that "inconsistencies or contradictions" in a witness's testimony may support a credibility determination consistent with Section 422(a)).

In separate findings at paragraphs 58 and 59, the WCJ wrote that he deemed the testimony of Mr. and Mrs. Reem "generally credible based on [the WCJ's] personal observations of [their] comportment and demeanor at hearing." Final Decision at 9, ¶¶ 58-59. It is well settled that when a witness testifies live before a WCJ, the WCJ may deem that witness credible or incredible based on observations of the witness's in-person demeanor. *Daniels*, 828 A.2d at 1053. Accordingly, we reject Claimant's challenges to these determinations by the WCJ.

Finally, Claimant challenges the WCJ's statement in paragraph 60.b that Dr. Bible failed to consider Claimant's "December 6, 2018 lumbar spine MRI." Final Decision at 9, ¶ 60.b. The WCJ noted this as part of his basis for crediting the testimony of Dr. Fayyazi over that of Dr. Bible. In his brief, Claimant maintains he never had the MRI in question, rendering it irrelevant to Dr. Bible's credibility. Claimant's Br. at 36. We construe this as a contention by Claimant that the WCJ's credibility assessment is based on a "misapprehension of material facts[.]" *Casne*, 962 A.2d at 19. This argument fails, however, as Claimant himself admitted he had the MRI on the date indicated by the Final Decision. The relevant testimony reads as follows:

Q: Did you have . . . an x-ray of your left hip on December 6th, 2018?

A: Yes, yeah, yeah, yeah, they were – yeah.

10

Q: It looks like you also had some – also on December 6th, 2018, you had an MRI of your low back?

A: Yeah, when they said hip, I was under the understanding it was my back.

Q: Okay. So on December 6th, 2018, you go get an MRI, an x-ray of your low back and left hip. Why?

A: I mean, I guess my back was – I'm trying to remember back – to remember the dates. I actually – I'm not sure if it correlates to the day I actually got hurt at work.

Q: Well, let me give you a reference. So you were saying . . . you injured yourself on December 10th of 2018.

A: Yes.

Q: This would've been four days prior?

A: Yes.

C.R. Item No. 19, N.T. 3/12/19, at 38. In light of this testimony, we reject Claimant's argument and affirm the Board's decision to affirm the WCJ's credibility determinations.

_____
STACY WALLACE, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kurtis Stover,                              :
                  Petitioner     :
                                :
         v.                                :   No.  1152 C.D. 2021
                                :
Don's Performance Corner, Inc.             :
(Workers' Compensation Appeal             :
Board),                                    :
               Respondent     :

## **O R D E R**

       **AND NOW**, this 27th day of June 2022, the September 9, 2021 Order of the Workers' Compensation Appeal Board is hereby **AFFIRMED**.


                               _____
                               STACY WALLACE, Judge