Commonwealth of Pennsylvania :
:
v. :
:
Barbara Cristina Goncalves, : No. 260 C.D. 2023
               Appellant : Submitted: July 5, 2024


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                             FILED: September 20, 2024


      Barbara Cristina Goncalves (Goncalves) appeals, pro se, from the Carbon County Common Pleas Court's (trial court) November 1, 2022 order finding her guilty of violating the 2006 International Property Maintenance Code (IPMC) which the Borough of Lansford, Pennsylvania (Borough), adopted in 2007.[1] Essentially, Goncalves presents six issues for this Court's review: (1) whether Goncalves is liable for IPMC violations at 340 West Snyder Avenue, Lansford, Pennsylvania (Property), despite that she was not the Property's record owner at the time of the violations;[2] (2) whether the trial court erred by relying on neighbors'

---

[1] Borough Ordinance No. 2007-02, adopted January 3, 2007. On December 14, 2022, the Borough amended Section 320-1 of the Borough's Ordinances to adopt the 2021 International Property Maintenance Code. Because the relevant facts herein occurred before the Borough adopted the 2021 International Property Maintenance Code, this Court considers the matter in accordance with the 2006 IPMC.

[2] The record evidence contains no information regarding Goncalves' ownership of the Property. Goncalves attached to her brief a copy of a December 12, 2017 deed reflecting her purchase of the Property. *See* Goncalves Br., App. I. She also attached a copy of a May 4, 2018

testimony where the neighbors exhibited animosity towards Goncalves; (3) whether the Borough's duplicate service of the citations on the Property's record owner relieves Goncalves of liability for the violations;[3] (4) whether the IPMC requires that vacant properties be connected to water; (5) whether Goncalves timely addressed an alleged violation pertaining to buckets collecting water in the Property's back yard; and (6) whether the trial court exhibited bias against Goncalves.[4]  After review, this Court affirms.

---

deed, purportedly reflecting her sale of the Property to Ronald Spiegel LLC.  *See* Goncalves Br., App. J.  The deeds are mentioned here only to provide context, as they are not a part of the record.

> An appellate court is limited to considering only those facts that have been duly certified in the record on appeal.  *City of Pittsburgh Comm['n] on Hum[.] Rel[s.] v. DeFelice*, 782 A.2d 586, 593 n. 10 (Pa. Cmwlth. 2001).  For purposes of appellate review, that which is not part of the [original] record does not exist.  *Id*.  Documents attached to a brief as an appendix or reproduced record may not be considered by an appellate court when they are not part of the [original] record.

*B.K. v. Dep't of Pub. Welfare*, 36 A.3d 649, 657 (Pa. Cmwlth. 2012).  Thus, this Court is prohibited from considering the deeds.

[3] Goncalves incorrectly characterizes her issue as one involving *double jeopardy*.

[4] This Court has restated Goncalves' Statement of Questions Presented (Statement of Questions) for brevity and clarity.  Goncalves' Statement of Questions provides:

> 1. Is [Goncalves] the current owner of record stipulated on the deed of the [P]roperty . . . ?
>
> . . . .
>
> 2. Has the real owner been served with the citations?
>
> . . . .
>
> 3. Does this cause double jeopardy since the monies for the same citations are being collected twice from two different sources?
>
> . . . .
>
> 4. Does [Goncalves] have any responsibilities towards said [P]roperty because she was the previous owner?
>
> . . . .

2

On July 22, 2020, Borough Zoning and Code Enforcement Officer, James Dean (Dean), visited the Property and, the next day, issued a Notice of Violation to Ronald Spiegel, LLC,[5] the Property's record owner, declaring the Property condemned for violations of the IPMC that Dean observed.[6] The July 23,

5. Are properties obligated to connect water if they are vacant and/or there is a condemn [sic] sign on the [P]roperty?

. . . .

6. Was the allege [sic] violation of "buckets placed in a backyard collecting water" amended within 20 days?

. . . .

7. Should the testimonies of James and Dorothy Gulla alone (without evidence) be deemed credible and sufficient against [Goncalves] since they confessed their hatred towards her and therefore reasons [sic] to personally attack her and avenge themselves?

. . . .

8. Did the [trial c]ourt show bias against [Goncalves] by erring in preventing [Goncalves] from proving the full extent of the [w]itnesses['] biases against [Goncalves,] thus[,] denying her of her rights under the Constitutional Sixth Amendment[, U.S. CONST. amend. VI]?

Goncalves Br. at 9-10.

[5] This Court notes that according to the deed Goncalves attached to her brief, Dean incorrectly identified the record owner Ronald Sp**ie**gel, LLC as Ronald Sp**ei**gel, LLC. For clarity, this Court shall hereafter refer to the record owner as Ronald Spiegel, LLC.

[6] The Notice of Violation identified the following violations:

**IPMC SECTION 302.4 Weeds**.  *All premises and exterior property shall be maintained free from weeds or plant growth in excess of [t]en (10) inches.  All noxious weeds shall be prohibited. Weeds are defined as all grasses, annual plants and vegetation, other than tree or shrubs provided; however, this term shall not include cultivated flowers or gardens.*

**IPMC SECTION 304.1 General**.  *The exterior of* a *structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare.*

**IPMC SECTION 304.2 Protective treatment**. *All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition. Exterior wood surfaces, other than decay resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints as well as those between the building envelope and perimeter of windows, doors, and skylight shall be maintained weather resistant and water-tight. All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion and all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Oxidation stains shall be removed from exterior surfaces. Surfaces designed for stabilization by oxidation are exempt from this requirement.*

**IPMC SECTION 302.2 Grading and drainage**. All premises shall be graded and maintained to prevent the erosion of soil and to prevent the accumulation of stagnant water thereon, or within any structure located thereon.

**IPMC SECTION 108.1.3 Structure unfit for human occupancy**. *A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, o[r] lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes* a *hazard to the occupants of the structure or to the public.*

**IPMC SECTION 108.5 Prohibited occupancy**. *Any occupied structure condemned and placarded by the code official shall be vacated* as *ordered by the code official. Any person who shall occupy* a *placarded premises or shall operate placarded equipment, and any owner or person responsible for the premises w[h]o shall let anyone occupy* a *placarded premises or operate placarded equipment shall be liable for the penalties provided by this code.*

UPON INSPECTION-VIOLATIONS: EXTERIOR PROPERTY HAS NOT BEEN MAINTAINED IN A CLEAN AND SANITARY MANNER. THE PREMISES HAS WEED IN EXCESS OF TEN (10") INCHES TALL. EXTERIOR OF STRUCTURE HAS UNPROTECTED WOOD SURFACES. BEHIND THE STRUCUTRE [SIC] THERE ARE SEVERAL BUCKETS

4

2020 Notice of Violation required the Property's owner to correct the identified violations within 30 days. Dean posted a condemnation order placard (Placard) at the Property. On August 18, 2020, Dean issued a Notice of Violation for the Property to Ronald Spiegel, LLC and Goncalves, declaring the Property condemned, identifying the same violations, and also stating that the Placard may only be removed by the Borough's Code Enforcement Officer. The August 18, 2020 Notice of Violation again ordered the Property's owner to correct the violations within 30 days.

On October 5, 2020, Dean visited the Property and issued Goncalves citations for the violations. The citations identified the following violations of the IPMC: (1) Section 108.1.3 (Structure Unsafe for Human Occupation);[7] (2) Section 108.4.1 (Removal of Condemnation Order Placard);[8] (3) Section 302.2 (Grading and Drainage);[9] and (4) Section 302.4 (Weeds).[10]

On June 13, 2022, the Carbon County Magisterial District Court (MDC) held a hearing on the citations. Goncalves did not appear, and the MDC convicted Goncalves on all four summary offenses. Goncalves filed an appeal in the trial court. On October 25, 2022, Dean visited the Property and took photographs.

On November 1, 2022, the trial court held a trial de novo. The Commonwealth of Pennsylvania (Commonwealth) presented the testimony of Dean

---

ACCUMULATING RAINWATER. THIS IS CONSIDERED STAGNANT WATER, WHICH MAY CONTAIN INSECTS THAT MAY CARRY DISEASE(S). AS THE WATER SERVICE IS NOT CONNECTED TO THE STRUCTURE - THE STRUCTURE IS CONDEMNED - UNFIT FOR HUMAN OCCUPANCY. OCCUPANCY IS NOT ALLOWED[.]

Trial Ct. Original Record (O.R.), Ex. 1.
[7] *See* O.R. at 48.
[8] *See* O.R. at 69.
[9] *See* O.R. at 8.
[10] *See* O.R. at 27.

and Goncalves' neighbors, James Gulla (Mr. Gulla) and Dorothy Gulla (Ms. Gulla) (collectively, the Gullas). Dean stated that he had received a complaint concerning people living in the Property without water, buckets located on the back deck and/or ground collecting rainwater, and overgrown weeds in the backyard. *See* Notes of Testimony, Nov. 1, 2022 (N.T.) at 5. Dean recounted that he visited the Property, observed violations, confirmed the complaint, reviewed the IPMC, and prepared the Notices of Violation. *See id.* at 6. The Gullas testified regarding their personal observations of the Property's conditions, including excessive weeds, buckets collecting water, and debris from the Property entering their property. *See id.* at 57-64. The Gullas also stated that they personally observed Goncalves remove the Placard that Dean had placed on the Property. *See id.* at 57.

Goncalves, pro se, also appeared at the trial, testified, and cross-examined the Commonwealth's witnesses. While cross examining Ms. Gulla, Goncalves referenced numerous disputes between Goncalves and the Gullas, which Ms. Gulla acknowledged. Goncalves' lengthy questioning of Ms. Gulla culminated in the following exchange:

> THE COURT: . . . . This witness has testified that she does not have a good relationship with you.
>
> [] GONCALVES: Okay. Great. Great. So[,] I'm just asking if there is [sic] other things that I might have done like, you know, provoking her in her fight or stealing her things.
>
> THE COURT: Ma'am, that does not have relevance to the [trial c]ourt's determination. If what you are trying to demonstrate was that there was a poor relationship here –
>
> [] GONCALVES: Yes, because --
>
> THE COURT: – **I think that's been established**.

6

[] GONCALVES: Not because of something I, you know, try to like be like physical or anything like that. It was those things, the weeds --

THE COURT: I haven't heard anything that there has been any physical altercation that this witness is contending here.

[] GONCALVES: All right. Thank you.

N.T. at 79-80 (emphasis added).

At the hearing's conclusion, the trial court convicted Goncalves of all four violations and ordered her to pay prosecution costs and four separate $200.00 fines. Goncalves appealed to the Superior Court on that same date.[11] On November 2, 2022, the trial court ordered Goncalves to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Goncalves filed her Rule 1925(b) Statement on November 21, 2022. On December 30, 2022, the trial court issued its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).[12]

Goncalves first argues that she is not liable for the subject violations because she is not the Property's record owner. Section 301.2 of the IPMC, entitled *Responsibility* states:

> **The owner of the premises shall maintain the structures and exterior property in compliance with these requirements**, except as otherwise provided for in this [IPMC]. A person shall not occupy as owner-occupant or permit another person to occupy premises which are not in a sanitary and safe condition and which do not comply with the requirements of this chapter. Occupants of a dwelling unit, rooming unit[,] or housekeeping unit are responsible for keeping in a clean,

---

[11] On January 3, 2023, the Superior Court transferred this matter to this Court.

[12] This Court's "review of the trial court's determination on appeal from a summary conviction is limited to whether there has been an error of law or whether competent evidence supports the trial court's findings." *Commonwealth v. Hall*, 692 A.2d 283, 284 n.2 (Pa. Cmwlth. 1997).

7

sanitary and safe condition that part of the dwelling unit, rooming unit, housekeeping unit[,] or premises which they occupy and control.

IPMC § 301.2 (emphasis added).[13]

The IPMC defines *owner* as "[**a**]**ny person**, agent, operator, firm[,] or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county[,] or municipality as holding title to the property; or otherwise **having control of the property** . . . ." IPMC § 202 (emphasis added).[14] It also defines *person* as "[a]n **individual**, corporation, partnership[,] or any other group acting as a unit." *Id*. (emphasis added). Thus, under the IPMC, an owner need not be a *record* owner.

Here, the Gullas' testimony supported the trial court's conclusion that Goncalves exercised control over the Property. The trial court recounted:

> [The Gullas] testified that they observed [Goncalves] staying at the subject [P]roperty for intermittent periods of time over the course of several years. Mr. Gulla testified that he observed [Goncalves] bring bags filled with items to the [P]roperty and that she[] told him she was renovating the [P]roperty. [The Gullas] testified that [Goncalves] told them that she owned the [P]roperty. [] Dean addressed the underlying citations to [Goncalves] based on the observations of [the Gullas].

Rule 1925(a) Op. at 5. The Gullas' testimony is substantial evidence[15] that Goncalves exercised control over the Property and, thus, is an owner as defined in the IPMC.

---

[13] https://codes.iccsafe.org/content/IPMC2006/chapter-3-general-requirements (last visited Sept. 19, 2024).

[14] https://codes.iccsafe.org/content/IPMC2006/chapter-2-definitions (last visited Sept. 19, 2024).

[15] "[C]redible testimony is evidence and may itself be sufficient to support a trial court's findings." *McFarland v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth. No. 254 C.D. 2014, filed Oct. 6, 2014), slip op. at 7. This Court's unreported memorandum opinions issued

8

Goncalves next asserts that the trial court should have disregarded the Gullas' testimony because the Gullas are biased against her and, thus, their testimony was not credible. The law is well established:

> As fact-finder, the trial court maintains exclusive province over matters involving the credibility of witnesses and the weight afforded to the evidence. The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence. As a result, this Court is prohibited from making contrary credibility determinations or reweighing the evidence in order to reach an opposite result.
>
> In fact, we are bound by the findings of the trial court which have adequate support in the record so long as the findings do not evidence capricious disregard of competent and credible evidence.

*Ziegler v. City of Reading*, 216 A.3d 1192, 1202-03 (Pa. Cmwlth. 2019) (citations omitted). While acknowledging that animosity existed between the Gullas and Goncalves, the trial court nonetheless credited the Gullas' testimony and relied on that testimony in reaching its decision.[16] Because the record evidence supports the trial court's credibility determinations and factual findings, this Court is bound by them and concludes that the trial court properly considered the Gullas' testimony.

Next, with respect to Goncalves' assertion that the Borough's duplicate service of the August 18, 2020 Notice of Violation on Ronald Spiegel, LLC relieved

---

after January 15, 2008 may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *McFarland* is cited for its persuasive value.

[16] Goncalves also challenges the trial court's reliance on the Gullas' testimony that Goncalves removed the Placard from the Property. However, the trial court is the fact-finder, and this Court is bound by its findings and credibility determinations. *See Ziegler*. Because the Gullas' testimony was substantial evidence that supported the trial court's finding that Goncalves removed the Placard, this Court cannot disturb it. *See Lutheran Home at Kane v. Dep't of Hum. Servs.*, 318 A.3d 164 (Pa. Cmwlth. 2024).

Goncalves of liability for the violations, Goncalves did not raise this issue in her Rule 1925(b) Statement.

"[A] party's failure to include an issue in its Rule 1925(b) [S]tatement waives that issue on appeal." *Wilson v. Commonwealth*, 209 A.3d 1143, 1150 (Pa. Cmwlth. 2019); *see also Berg v. Nationwide Mut. Ins. Co.*, 6 A.3d 1002, 1015 (Pa. 2010) (quoting *Commonwealth v. Butler*, 812 A.2d 631, 634 (Pa. 2002)) (Baer, J., dissenting) ("[A] failure to include issues in a Rule 1925(b) [S]tatement result[s] in 'automatic' waiver, which c[an] be found *sua sponte* by courts.").

The Pennsylvania Supreme Court has explained:

The purpose of a Rule 1925(b) [S]tatement is to facilitate appellate review and to provide the parties and the public with the legal basis for a judicial decision. To this end, Rule 1925(b)(4)(ii) provides that the Rule 1925(b) [S]tatement "shall **concisely** identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii) (emphasis added). . . .

To ensure that a Rule 1925(b) [S]tatement is both concise but also sufficiently detailed to identify all of the issues desired to be raised on appeal, Rule 1925(b)(4)(v) provides that "[e]ach error identified in the [Rule 1925(b)] Statement will be deemed to include every **subsidiary issue** that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v) (emphasis added). As the explanatory note to this subsection of Rule 1925(b) explains, Rule 1925(b)(4)(v) was modeled after [r]ule 14(1) of the Rules of the Supreme Court of the United States [(SCR)], which addresses the contents of a petition for a writ of certiorari. [*See*] Pa.R.A.P. 1925 Note. Rule 14(1) [of the SCR] states in relevant part that "[t]he statement of any question presented is deemed to comprise every subsidiary issue fairly included therein." Sup. Ct. R. 14(1).

The text of these rules emphasizes that to be a "subsidiary issue," the unstated issue must be "included" within the stated issue. Whether the unstated issue is fairly "included" within the stated issue depends in substantial

10

part upon the interrelationship between the two issues - i.e., whether resolution of the stated issue may depend, in whole or in part, upon the resolution of the unstated issue. In other words, the question is whether resolution of the two issues is sufficiently connected to each other such that the resolution of one may depend in some respect upon resolution of the other. This interrelationship typically occurs when the unstated issue is an element of, or important to, the broader stated issue. . . .

Conversely, an unstated issue is not subsidiary when it is separate and distinct from the stated issue.

*Commonwealth v. Price*, 284 A.3d 165, 170-71 (Pa. 2022) (citation and footnote omitted).

Here, nothing in Goncalves' Rule 1925(b) Statement raised the issue of whether the August 18, 2020 Notice of Violation's service on Ronald Spiegel, LLC relieved her of liability. Further, such is not a subsidiary issue to any issue Goncalves included in her Rule 1925(b) Statement.[17] Thus, it is waived.

[17] Goncalves' Rule 1925(b) Statement states, in relevant part:

> 6. Because of the nature of the testimony of the Gullas[,] their testimony should be dismissed . . . .
>
> 7. [Goncalves] lives in another state and does not reside at the [P]roperty. [Goncalves] was wrongly issued these four citations.
>
> 8. [The Commonwealth's] and witnesses['] allegations are verbal statements of personal opinions. They have not submitted any tangible proof to support their claims.
>
> . . . .
>
> 9. There is no law forcing running water in a vacant property. [] Dean testified to no know [sic] if he can issue such citation in this matter. [The Commonwealth] did not provide a law in the [IPMC] [sic] supporting this citation. [Goncalves] respectfully asks for this citation to be dismissed as officer confessed not possessing knowledge to issue such citation.
>
> 10. The weeds are an issue of the landlord and should be addressed with [Ronald Spiegel, LLC]. [Goncalves] respectfully asks for this citation to be dismissed.

11

Goncalves also contends (without citation to authority) that the IPMC does not require that vacant properties be connected to water, that an owner has the "absolute right" to disconnect water to a vacant property, Goncalves Br. at 25, and that because no one resides at the Property, she did not violate the IPMC. However, the Gullas' testimony, which the trial court credited, that they observed Goncalves staying at the Property for intermittent time periods over several years established that the Property was not vacant.

Further, Dean explained, that in addition to the information he received from the Gullas:

> I issued [citations] based upon someone was living there [sic]. From my interpretation, the buckets were being used, okay. The buckets were filled with water. I go back. They were empty. I come back and they are filled with water. Then they're emptied again and then eventually they were flipped over. The tires alongside the building. I'm sitting there like, hmmm, they weren't here before, now they are here. Someone is doing something here.

N.T. at 35.

Section 108.1.3 of the IPMC provides:

> A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful

---

11. For the removal of the [P]lacard[], [the Commonwealth] did not submit proof of who removed [it]. All witnesses confessed not seeing [Goncalves] removing [it]. For all at stake the Gullas could have removed the [P]lacard[] themselves in order to incriminate and embarrass [Goncalves] deeper, in their plot to keep [Goncalves] away from the [P]roperty and thus liberating parking for themselves. [Goncalves] respectfully asks for this citation to be dismissed.

12. And finally, there is no law prohibiting buckets in a private property yards [sic]. [The Commonwealth] did not provide a law in the [IPMC] supporting this citation. [Goncalves] respectfully asks for this citation to be dismissed.

Rule 1925(b) Statement.

12

> or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, or **lacks ventilation**, **illumination**, **sanitary or heating facilities**[,] **or other essential equipment** required by this [IPMC] or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

IPMC § 108.1.3 (emphasis added). Dean confirmed that there was no water service to the Property. Because the trial court found, based on substantial evidence, that the Property was not vacant, the trial court could reasonably conclude that the occupied Property lacked sanitary facilities as the IPMC required, and Goncalves' argument that vacant properties are not required to be connected to water service does not discharge her from responsibility for the violation. Accordingly, this Court discerns no error.

Goncalves next claims that she timely addressed the violation pertaining to the buckets collecting water in the Property's back yard. Section 302.2 of the IPMC requires that "[a]ll premises shall be graded and maintained to prevent the erosion of soil and to prevent the accumulation of stagnant water thereon, or within any structure located thereon." IPMC § 302.2. The record evidence reflects that during Dean's visit to the Property, he observed buckets containing stagnant water at the Property. *See* N.T. at 21. Thus, according to his testimony, Dean observed that the Property was not "maintained . . . to prevent the accumulation of stagnant water thereon[.]" IPMC § 302.2.

> Goncalves contends:

> Dean confessed seeing the water being collected in buckets placed outside in the yard on the first visit but did not take pictures. This was on October 5th. When he returned to the [P]roperty the second time on October 25th[,] he did take pictures[,] but the buckets were now upside down not collecting water and so[,] empty of water. If there was no water in the buckets, there was no violation. And if the violation was corrected within

13

twenty (20) days, the citation was issued on October 5th and the picture was taken on October 25th when he returned to the [P]roperty 20 days later to make due diligence to see if the violations were corrected, then this citation should not have been submitted to the [MDC]. Yet . . . Dean marked the citation as an uncorrected violation.

Goncalves Br. at 26 (citation omitted).

The August 18, 2020 Notice of Violation required Goncalves to remedy the identified violations (including the standing water) within 30 days. Dean issued the four citations on October 5, 2020 - 48 days later - based on his observations at that time. *See* N.T. at 48. As the violation was not corrected within 30 days, Dean properly issued the standing water citation. Accordingly, Goncalves' argument fails.

Finally, Goncalves argues that the trial court exhibited bias against her by improperly limiting her cross examination of the Gullas, thereby denying her the opportunity to sufficiently demonstrate their bias. Pennsylvania Rule of Evidence 611(a)(2) provides that the courts should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to "avoid wasting time[.]" Pa.R.E. 611(a)(2). A "trial court [] has considerable discretion in determining the scope and limits of cross-examination, and [a reviewing c]ourt cannot reverse absent a clear abuse of discretion or error of law." *Commonwealth v. Boxley*, 838 A.2d 608, 615 (Pa. 2003). Here, the record reflects that the trial court permitted Goncalves to adequately explore and reveal prior disputes between the parties for the purpose of demonstrating possible bias. The trial court also acknowledged the "poor relationship" between Goncalves and the Gullas. N.T. at 80. Nonetheless, as it was permitted to do when substantial evidence supports such a finding, the trial court found the Gullas' testimony credible.

To further support her contention that the trial court was biased against her, Goncalves claims that the trial court prohibited her from having her briefcase

14

and paperwork at her table during trial, but permitted the opposing party's counsel to do so. Goncalves asserts that the trial court's willingness to permit opposing counsel to retain his briefcase demonstrates bias in opposing counsel's favor. "[J]udicial remarks made during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties or their cases, ordinarily do not support a bias or partiality challenge." *Cellucci v. Laurel Homeowners Ass'n*, 142 A.3d 1032, 1045 (Pa. Cmwlth. 2016) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Further, "[a]s a general matter, it is indisputable that trial courts have broad discretion in controlling trial conduct." *Commonwealth v. Purnell*, 259 A.3d 974, 984 (Pa. 2021). Here, the record reflects that the trial court invited Goncalves to remove any necessary documents from her briefcase to have available during trial, but instructed that her briefcase could not remain at her table. *See* N.T. at 11. Such conduct does not, on its face, reflect bias.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

Commonwealth of Pennsylvania          :
                                      :
            v.                        :
                                      :
Barbara Cristina Goncalves,           :     No. 260 C.D. 2023
                 Appellant            :

### O R D E R

AND NOW, this 20th day of September, 2024, the Carbon County Common Pleas Court's November 1, 2022 order is affirmed.

_____

ANNE E. COVEY, Judge